UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

C/A No. 4:14-cv-4706-BHH-KDW

| | | |
|---|---|---|
| Surf's Up, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Report and Recommendation |
| v. | ) | |
| | ) | |
| Rick Rahim; Myrtle Laser Tag, LLC; and | ) | |
| BusinessVentures.com, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This trademark-infringement matter is before the court on Plaintiff's Motion for Entry of Default Judgment. ECF No. 87. In its Complaint Surf's Up, LLC ("Surf's Up" or "Plaintiff") brings claims pursuant to the Lanham Act, 15 USC §§ 1051, *et seq.* and common law claims for "trademark infringement, deceptive trade practices." Compl. ¶ 1, ECF No. 1. Plaintiff seeks injunctive and monetary relief, as well as attorneys' fees and costs. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Because this motion is dispositive, the undersigned submits this Report and Recommendation ("Report") for the court's consideration.

I.      Background

        A.      Initial entry of default

        Plaintiff served Defendant Myrtle Laser Tag, LLC ("Myrtle Laser Tag") with a Summons and Complaint by certified mail on January 27, 2015. ECF No. 6. Myrtle Laser Tag did not timely answer or otherwise respond to the Complaint, and Plaintiff requested that the Clerk of Court enter default. ECF No. 10. The Clerk entered default as to Myrtle Laser Tag on February 27, 2015. *See* ECF No. 12. On March 12, 2015, attorney Benjamin Parker appeared and filed a

Motion to Dismiss on behalf of Defendants Myrtle Laser Tag, BusinessVentures.com LLC ("BusinessVentures.com"), and Rick Rahim ("Rahim"). ECF No. 13. On March 26, 2015, Counsel Parker filed a Motion to Set Aside Default as to Myrtle Laser Tag. ECF No. 16. Plaintiff's counsel responded to the pending Motions and filed a Motion for Preliminary Injunction on behalf of Surf's Up, ECF No. 21, to which Defendants responded on May 18, 2015, ECF No. 22, and Plaintiff replied on May 29, 2015, ECF No. 23.

B.    Relief from initial default and relief of counsel

On February 18, 2016, Counsel Parker filed a motion to withdraw as counsel for all Defendants. ECF No. 24. On March 21, 2016, United States District Judge Bruce H. Hendricks granted the motion of Surf's Up to be relieved from default and granted Parker's Motion to be Relieved as Counsel. ECF No. 25. The court stayed the matter for 45 days to "allow the corporate defendants [Myrtle Laser Tag and BusinessVentures.com] o obtain substitute counsel." *Id.* at 2. In that same order, the court denied the motion to dismiss and the motion for a preliminary injunction, finding it was unable to determine issues raised in those motions on the record then before it. *Id.* at 3–4.

C.    Entry of default as to all Defendants

As the matter then included pro se litigants, the matter was referred to the undersigned for pretrial handling. On March 24, 2016, the undersigned issued an Order, stating, *inter alia*, that the pro se corporate Defendants [Myrtle Laser Tag and Businessventures.com] were required to have retained counsel licensed to practice in this District and that counsel was to have filed a formal appearance in this case on or before May 5, 2016 as District Judge Hendricks had directed. ECF No. 32. Myrtle Laser Tag and Businessventures.com were advised that corporations were not permitted to represent themselves and that failure to obtain counsel "could

have serious consequences, including, but not limited to, striking a defense, striking a pleading, and/or holding the party in default." *Id.* at 1–2. Defendant Rahim was advised that individual defendants such as himself were permitted to proceed pro se but were required to follow the court's rules and orders. *Id.* at 2–3.

Counsel did not appear on behalf of Myrtle Laser Tag and Businessventures.com, nor did Defendant Rahim submit additional pleadings in this matter. On June 21, 2016, Judge West issued a Report and Recommendation recommending that default be entered against Defendants Myrtle Laser Tag and BusinessVentures.com for failure to appear through counsel by the required deadline and failure to otherwise communicate with the court. ECF No. 43. On November 7, 2016, Judge Hendricks issued an Order adopting the undersigned's Report, and ordering the Clerk of Court to enter default against Defendants Myrtle Laser Tag and BusinessVentures.com. ECF No. 61. The Clerk entered default as to those Defendants that same day. ECF No. 62. As Defendant Rahim did not respond to the court's orders or otherwise respond to the Complaint, on February 21, 2017, the undersigned recommended that the Clerk of Court be instructed to enter default as to Rahim. ECF No. 74. On March 22, 2017, Judge Hendricks issued an Order adopting the undersigned's Report and ordering the Clerk of Court to enter default against Defendant Rahim. ECF No. 80. The Clerk entered default against Defendant Rahim on March 22, 2017. ECF No. 81.

D.      Motion for Entry of Default Judgment

On April 10, 2017, Plaintiff filed the Motion for Entry of Default Judgment now under consideration. ECF No. 87. Defendants were served with the Motion on April 26, 2017 and affidavits of service for each Defendant were filed on May 2, 2017. ECF Nos. 89, 90. No Defendant has filed any response to Plaintiff's Motion. On August 8, 2017, the undersigned

issued an order setting a hearing on the Motion for Default Judgment for October 18, 2017, instructing Plaintiff to file a supplemental memorandum outlining its establishment of the elements of its claims and the relief it seeks, and advising pro se Defendant Rahim it could file a response by October 2, 2017 if he so chose, and that Defendants Myrtle Laser Tag and BusinessVentures.com could file a response through counsel. ECF No. 93. The Order was sent to all Defendants at their last known addresses by both regular and certified mail. Although the copies the court sent to Myrtle Laser Tag were returned as undeliverable, the certified-mail copies of the Order were signed for by Rahim and by an individual on behalf of BusinessVentures.com. ECF Nos. 101, 102. Plaintiff submitted the requested briefing, ECF No. 99, but no Defendant filed any response, nor has any Defendant otherwise submitted any filing to the court since the filing of the Motion for Default Judgment.

The undersigned conducted a hearing on the Motion for Default Judgment on October 18, 2017, at which time counsel for Plaintiff appeared and offered argument on behalf of Plaintiff. No one appeared on behalf of any Defendant. At the court's request, Plaintiff has now provided an affidavit with details of specific damages sought as well as supplemental briefing as to attorneys' fees and costs sought. ECF No. 107. Having considered all pleadings, briefing, and arguments of Plaintiff's counsel, the undersigned issues the following proposed findings and conclusions recommending default judgment.

II.     Recommended findings and conclusions

Having reviewed Plaintiff's Complaint, Answers to Local Rule 26.01 Interrogatories, Requests for Entry of Default, Motion for Default Judgment, as well as all supporting and supplemental information provided, the court accepts Plaintiff's well-pleaded factual allegations as true and makes the following factual findings. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318,

322 n.2 (4th Cir. 2008) (accepting plaintiff's allegations against defaulting defendant as true, noting a defaulting defendant "'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001)).

Plaintiff, a South Carolina limited liability company, owns the federal trademark Registration No. 3496814—which is the trademark for "Surf's Up Family Fun Center." Compl. ¶¶ 2, 8; U.S. Patent and Trademark Office Notice of Acceptance of Statement of Use of "Surf's Up Family Fun Center" Mark, ECF No. 1-1. Plaintiff is owned in equal parts by Patrick E. Fire and Teresa M. Walden. Compl. ¶ 9; Affidavit of Patrick E. Fire ("Fire Aff.") ¶¶ 1–3, ECF No. 107-1. Plaintiff formerly owned and operated an amusement facility and business located at 4112 Carolina Commercial Drive in Myrtle Beach, South Carolina called Surf's Up Family Fun Center, which opened in April 2008. Compl. ¶ 13. In September 2010 Plaintiff closed the business. Subsequently, Defendants purchased the property on which and the building in which the business was formerly operated. *Id.* ¶ 20. Defendants began operating the amusement business in early 2012. Plaintiff, through Fire, "learned Defendants were unlawfully and improperly using, utilizing and misappropriating" Plaintiff's intellectual property, which Defendants did not own. *Id.* ¶ 21. Plaintiff learned Defendants were using a website and copyrighted logo belonging to Fire, as well as Plaintiff's registered Trademark. *Id.* ¶ 21. Plaintiff and Fire asserted their rights in that intellectual property and, in the spring of 2012, Fire—on behalf of himself and Plaintiff—and Defendants reached an agreement in which Defendants agreed to purchase the rights to the website and the copyrighted logo from Fire and the registered and protected Trademark from Plaintiff. *Id.* ¶ 22. When Defendants reneged on that agreement, Fire personally sued Defendants in Horry County Magistrate's Court. The suit in that court was

brought by Fire himself and concerned only the website and copyright violations. That litigation did not relate to the trademark infringement suffered by Plaintiff. *Id.* ¶ 22. In March 2015, the Horry County Magistrate's Court issued a judgment in favor of Patrick Fire and against Defendants in the sum $7,333.33 on each of the two claims, for a total of $14,666.66. Amended Judgment, ECF No. 19-1.

In early May of 2012, Dennis M. Moskal, counsel for Plaintiff, sent a demand letter to Defendants, requesting that they "immediately cease and desist from any further commercial use of the Trademark in connection with advertising, promotion, offer or sale of any goods or services." Letter, ECF No. 99-1[1]; *see* Compl. ¶ 26. Defendants did not comply with Plaintiff's demand letter. Rather, Defendants continue to use the Trademark. Compl. ¶¶ 27–28.

Defendants' website—both at the former address, www.surfsupfun.com and at the current address, www.myrtlebeachlasertag.com–includes Plaintiff's registered trademark, "Surf's Up Family Fun Center." Compl. ¶ 24; *see also* ECF No. 99-2 (printed copy of homepage provided by Plaintiff with Aug. 27, 2017 filing). This remains true as of the writing of this Report. http://www.myrtlebeachlasertag.com (last visited Nov. 14, 2017).

If one goes to the website www.lasertaggroup.com, and clicks on the icon "Locations" a viewer will see the listing for "Surf's Up Family Fun Center" and can connect directly to its website. http://www.lasertaggroup.com/locations.cfm (last visited Nov. 14, 2017), *see* ECF No. 99-3. If one clicks on the "On TV" icon, the viewer can actually watch the television commercial for the "Surf's Up Family Fun Center" wherein the protected Trademark is displayed prominently throughout. http://www.lasertaggroup.com/television.cfm (last visited Nov. 6,

---

[1] As noted by Plaintiff, *see* ECF No. 99 at 4 n.1, the copy of the letter found at ECF No. 99-1 is incorrectly dated January 31, 2014 as the result of a printer's auto-dating program. The letter indicates May 4, 2012 is the deadline for Defendants to cease and desist, making the printing date error apparent.

2017); *see* ECF No. 99-4. At the bottom of the "extrememyrtlebeach.com" home page is a banner indicating the "[s]ite design and content [is] by Rick Rahim." http://www.extrememyrtlebeach.com (last visited Nov. 14, 2017). The website information continues: "Copyright Myrtle Laser Tag, LLC I Managed by BusinessVentures.com II A LaserTagGroup.com store." *Id.*; *see also* ECF No. 99-3 (copy of LaserTagGroup.Com homepage showing locations, including Surf's Up Family Fun Center as "Myrtle Beach (#1)"). This remains true as of the writing of this Report.

As alleged by Plaintiff, Defendants' continued use of the Trademark has created confusion as to the business and source, affiliation, approval and/or sponsorship of the materials, advertisements, and services bearing the Trademark. Plaintiff further alleges consumers are likely to incorrectly believe that Defendants' www.lasertaggroup.com website and its www.myrtlebeachlasertag.com website, as well as its business venture and products, are associated with Plaintiff. Plaintiff submits such confusion has damaged its ability to interact with potential patrons and gain revenue through the sale of merchandise bearing the Trademark and, consequently, has prevented or reduced its ability to perform any business functions. Compl. ¶ 25.

III.     Analysis of Lanham Act claim

A.     Liability

Accepting these facts as true, the court now reviews the Complaint to ensure it sets forth claims as to which relief can be granted pursuant to the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Joe Hand Promotions, Inc. v. Scott's End Zone, Inc.*, 759 F. Supp. 2d 742, 747 (D.S.C. 2010); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610,

612 n.3 (E.D. Va. 2003). If Plaintiff's claims pass Rule 12(b)(6) muster, the undersigned must also consider the appropriate damages to be awarded Plaintiff.

Although Plaintiff's Complaint includes a cause of action for common law trademark infringement as well as trademark infringement in violation of the Lanham Act, Plaintiff's counsel advised at the hearing that Plaintiff elects to proceed on its Lanham Act claim.

> The Lanham Act provides, in pertinent part:
> (1) Any person who shall, without the consent of the registrant –
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, or
>
> (b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrapper, receptacles or advertisements intended to be used in commerce or upon or in connection with the sale, offering for sale, distribution, or advertising of any goods or services in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. §1114(1)(a) and (b). Further, the Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

To prevail, Plaintiff must demonstrate that it has a "'valid, protectable trademark and that the defendant's use of [the mark or] a colorable imitation of the trademark is likely to cause confusion among consumers.'" *Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)). "[A]n unauthorized use of a trademark infringes the trademark holder's rights if it is

likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods." *Anheuser–Busch, Inc. v. L & L Wings, Inc.,* 962 F.2d 316, 318 (4th Cir. 1992).

Plaintiff has presented uncontested evidence that it owns a valid, protectable trademark for "Surf's Up Family Fun Center." Attached to the Complaint is a copy of Trademark Registration Number 3496814, which was issued to Surf's Up LLC. The United States Patent and Trademark Office issued the trade mark for "Surf's Up Family Fun Center" on September 2, 2008. ECF No. 1-1. Plaintiff has provided ample evidence of a potential for confusion or deceit among consumers. Defendants continue to use the registered mark in operating the same sort of business and services—laser tag—at the same location where Plaintiff had run a laser-tag business. *See, e.g.*, ECF Nos. 99-2, 99-3, 99-4. Defendants continue to use the Surf's Up Family Fun Center name in manners certain to confuse the consuming public as to the source of the service. Accordingly, the undersigned recommends a finding that Plaintiff has established the elements of a Lanham Act trademark infringement claim.

B.     Damages

The court now considers Plaintiff's request for monetary damages and other relief. The Lanham Act provides that a successful litigant "shall be entitled, [] subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Under certain circumstances, the court may award up to three times the amount of actual damages. Further, the court "in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* Here, Plaintiff seeks monetary damages, attorneys' fees, and injunctive relief. Plaintiff does not request that the court treble or otherwise multiply any monetary damages award.

Recognizing the Lanham Act "gives little guidance on the equitable principles to be applied by a court in making an award of damages," the Fourth Circuit has set out the following six nonexclusive factors for courts to consider in evaluating a request for damages under the Lanham Act:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) (internal quotation and citations omitted).

In its Supplemental Memorandum in Support of Motion for Default Judgment, ECF No. 99, Plaintiff discussed the *Synergistic* factors, arguing they support a monetary-damages award of $1,605,208.33. Subsequent to the hearing on the Motion for Default Judgment, Plaintiff's counsel submitted a Memorandum in Support of Request for Attorney's Fees and Costs, ECF No. 107, which includes the affidavit of Plaintiff's 50-percent owner, Patrick Fire, ECF No. 107-1. Having reviewed these filings, the court considers the *Synergistic* factors in evaluating the amount it is recommending Plaintiff be awarded.

The first *Synergistic* factor—whether the defendant had the intent to confuse or deceive—"addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith." *Synergistic*, 470 F.3d at 175. The evidence presented by Plaintiff demonstrates Defendants' "intent to confuse or deceive" consumers. For example, Plaintiff has presented an April 29, 2015 printed copy of the first page of the www.myrtlebeachlasertag.com website. ECF No. 99-6. This printout of that website—printed over three years after Defendants took over the property and reopened the laser tag facility—reads: "Surf's Up Laser Tag and Family Fun Center in Myrtle Beach is Open Again."

ECF No. 99-6 at 2 (top of page just below court's docket entry information). Nowhere on this page is there any indication that management or ownership of Surf's Up Family Fun Center had ever changed. The Surf's Up Family Fun Center name and logo also appear in the upper-right corner of that page, just below the "Open Again" information. *Id.* This and other continued use of the Surf's Up Family Fun Center name and logo make it clear that Defendants were (and are) intentionally attempting to trade on the name, reputation, and customer base of Plaintiff-the trademark owner that previously operated the same sort of establishment at the same location. Further, as detailed above, Defendants began using the protected mark and logo without inquiring as to their ownership. More egregiously, Defendants continued *and still continue* to misappropriate Plaintiff's mark despite having been advised of the mark's ownership in early May of 2012, the date of the cease-and-desist letter from Plaintiff's counsel. Plaintiff's evidence makes it clear Defendants willfully deceived consumers.[2]

The second factor "involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities, and the extent to which the plaintiff had entered the market area where the infringement occurred." *Synergistic*, 470 F.3d at 175. Plaintiff has acknowledged that it was not in the amusement-business market in Myrtle Beach at the time of infringement and, as such, incurred no lost sales. ECF No. 99 at 9.

The third factor "addresses whether another remedy, such as an injunction, might more appropriately correct any injury the plaintiff suffered from the defendant's infringement

---

[2] The undersigned's recommended finding that Plaintiff has satisfied the first *Synergistic* factor requires no additional evidence of Defendants' intentional infringement. In any event, the undersigned notes Plaintiff has provided information from a case against Defendant Rahim and others in the Eastern District of Virginia in which he was sued for trademark infringement. *Directv, Inc., v. VMC Satellite, Inc., et al.,* No. 1:03-cv-01404-LMB, 2003 WL 25946133 (E.D. Va. Nov. 7, 2003). Plaintiff has provided court-docket information indicating there was a stipulated permanent injunction entered in that matter. *See* ECF Nos. 99-7 and 99-8.

activities." *Synergistic*, 470 F.3d at 176. Here, Defendants' continued infringing behavior after receiving the cease-and-desist letter as well as process and other papers in the instant litigation suggests a finding that injunctive relief would be insufficient. The undersigned agrees with Plaintiff that both monetary and injunctive relief are appropriate here to provide Plaintiff any potential meaningful relief. *Cf. Choice Hotels Int'l, Inc. v. Zeal, LLC*, No. CV 4:13-01961-BHH, 2016 WL 4055023, at *6 (D.S.C. July 29, 2016), *appeal dismissed* (Oct. 3, 2016) (noting defendant's failure to comply with permanent injunction that had been issued months earlier and finding that "[s]uch blatant noncompliance indicates that monetary damages should also be awarded to curtail any continued infringement.").

The fourth factor considers whether Plaintiff waited too long after infringement began to seek court relief. *Synergistic*, 470 F.3d at 176. Here, there is no evidence of unreasonable delay by Plaintiff. Rather, the evidence indicates Plaintiff acted to protect and defend its rights. The undersigned finds this factor, too, weighs in favor of a monetary award to Plaintiff.

The fifth factor addresses the public interest in making the misconduct unprofitable. The court must balance "a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty." *Synergistic*, 470 F.3d at 176. Here, Defendants' actions as detailed above—including their continued use of Plaintiff's mark—indicate Defendants have negatively impacted the public interest. In any event, the undersigned remains mindful that any damages award "should constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

The sixth and final factor—whether the situation involves a case of "palming off"— "involves the issue of whether the defendant used its infringement of the plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products or services were really

those of the plaintiff." *Synergistic*, 470 F.3d at 176. Plaintiff's evidence, particularly the website advertisement on Defendants' website that Surf's Up Family Fun Center is "open again," indicates Defendants were "palming off" their business by attempting to sell their services to the public as those of Plaintiff.

On balance, the *Synergistic* factors favor awarding monetary damages to Plaintiff. The court now considers Plaintiff's requested monetary damages.

1.     Monetary damages: disgorgement of profits

Plaintiff seeks to disgorge Defendants' profits. 15 U.S.C. § 1117(a). Section 1117(a) provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." "The infringer's burden of proving deductible costs is not carried by records showing only a vague, undifferentiated category of 'overhead' or 'checks written.'" 5 McCarthy on Trademarks and Unfair Competition § 30:66 (4th ed.).

With no discovery from Defendants in this default matter, Plaintiff is unable to provide precise evidence of Defendants' sales. Rather, Plaintiff has presented evidence of its own sales during 2008 and 2009 when it operated Surf's Up Family Fun Park in the same location as its infringer still operates the same type of business. To that end, Plaintiff has provided its 2008 and 2009 income tax returns and the affidavit testimony of principal Patrick Fire. ECF Nos. 99-9, 99-10, 107-1; *see also* ECF No. 99 at 11-12. The undersigned is of the opinion that this evidence is acceptable in establishing profits in a default situation such as this one. As discussed in *Hospitality International v. Mahtani*, No. CIV.A.2:97-CV-87, 1998 WL 35296447, at *8 (M.D.N.C. Aug. 3, 1998), "[t]o satisfy the burden of proving defendant's sales, the injured party need only produce evidence establishing a 'reasonable estimate' of defendant's sales." *Id.* at *8

(quoting *Louis Vuitton S.A. v. Downtown Luggage Center,* 706 F. Supp. 839 (S.D. Fla. 1988)). In

*Choice Hotels International, Inc. v. Fisher*, the court relied on the *Hospitality International*

decision and other decisions that found Lanham Act plaintiffs could look to other, sometimes

indirect, evidence in establishing the infringer's profits for damages purposes. No. 2:13-CV-23,

2015 WL 12748029, at *6–8 (N.D.W. Va. Apr. 1, 2015) (collecting cases) [hereinafter *Fisher*].

In *Fisher* the court found historical revenue data to provide an approximation of the amount of

damages that is calculable by "just and reasonable inference." (quoting *Hospitality Int'l*, at *11).

*See Aris Isotoner, Inc. v. Pong Jin Trading Co.,* 17 U.S.P.Q.2d 1017 (S.D.N.Y.1989) (holding

that when infringer is unable to provide sufficient evidence of actual sales volume, the court may

rely on indirect or circumstantial evidence and extrapolate sales from that other evidence).

Here, Plaintiff sets out its uncontroverted calculation for Defendants' profits based on

historical revenue data for Surf's Up, LLC as follows:

> 3. Teresa Walden, my partner and the other fifty (50%) percent owner of
> Surf's Up, LLC, and I began operating Surf's Up Family Fun Center in Myrtle
> Beach on April 12, 2008. The business had gross sales of $420,311 for 37 weeks
> of business, which equates to $11,360 in sales per week. If this were extrapolated
> out to a full fifty two (52) weeks, this would result in annual sales of $590,720.
> The annual sales reported by the business in 2009 were $563,879. The average of
> these two figures is $577,300, but for ease of math and for purposes of requesting
> a default judgment, we simply used a figure of $575,000 for annual sales. We
> stopped operating the business in 2010. Ms. Walden is still entitled to a fifty
> (50%) percent share of any distributions made by the company.
> 4. Assuming annual sales of $575,000, the annual sales recognized by the
> Defendants for the five years and seven months they have been infringing our
> trademark would be $3,210,416.

Fire Aff. ¶¶ 3–4, ECF No. 107-1 (proffering figures for the 5-year-7-month period from early

2012 when Defendants began infringing through October 18, 2017, the date of the damages

hearing).

The undersigned is of the opinion that this calculation is a reasonable and appropriate calculation of sales data under the circumstances of this case. The Lanham Act further provides that, once a plaintiff has proved a defendant's sales, the "defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117. In the event a defendant provides no evidence to assist the court in establishing any cost deductions, "the defendant's profits are usually held to be equal to the defendant's sales." *Hospitality Int'l,* 1998 WL 35296447 at *9. The undersigned finds it appropriate to consider the full amount of the sales to be profits for these purposes.

The analysis does not end here, however, as the court is mindful of the Lanham Act's direction that damages awarded "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). Acknowledging this, Plaintiff suggests that the court assume a 50% profit margin, just as United States District Judge David C. Norton did in *Muhler Co. v. Window World of North Charleston LLC*, No. 2:11-CV-00851-DCN, 2014 WL 4269078, at *7 (D.S.C. Aug. 28, 2014). In that case Judge Norton noted the defendant had not defended the case and had not provided evidence of costs or other deductions. Nonetheless, the court found that to award the full amount of sales as established by the plaintiff would "almost certainly penalize [defendant] instead of compensating [plaintiff]." *Id.* Instead, the court assumed a 50% profit margin and determined it was appropriate to reduce the amount of sales by 50% to determine the amount of lost profits to be awarded. *Id.*

Here, Plaintiff has presented the following information as to costs related to its gross sales for 2008 and 2009:

> 5. Labor is the largest expense associated with the business. In 2008 our labor costs were $214,050 (51% of sales) and in 2009 they were $177,618 (31% of sales). Being conservative and allowing the Defendants 50% of sales for costs or expenses, their profit would be $1,605,208, which is the figure we are asking for as a default judgment.

Fire Aff. ¶ 5. Bolstered by this evidence, the undersigned finds the division of the sales figures by 50% is "just, according to the circumstances of the case." 15 U.S.C. § 1117(a). Accordingly, it is recommended that Plaintiff be awarded damages in the form of lost profits in the amount requested by Plaintiff: $1,605,208. *See* Fire Aff.

2. Injunctive relief

In Plaintiff's Complaint, it seeks the following injunctive relief:

1. That a preliminary and permanent injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

a) using the Surf's Up Trademark, or any other trademarks that are confusingly similar to the Trademark, for retail products, or making any other unlawful use of the Trademark or any other trademarks owned by Surf's Up;

b) performing any act which is likely to lead members of the trade or public to believe that any product manufactured, imported, distributed, offered for sale, or sold by Defendants is in any manner associated or connected with Surf's Up, or is licensed, sponsored, approved, or authorized by Surf's Up;

c) engaging in any other activity constituting infringement of the Trademark;

d) taking any action, including the unauthorized use of the Trademark, that dilutes the unique association between the Trademark and Surf's Up, or that tarnishes the reputation or image of Surf's Up;

e) disposing of, destroying, altering, moving, removing, concealing, tampering with, or in any manner secreting any business records (including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to any retail services offered in connection with the Trademark, or any mark or designation that is confusingly similar to any of the Trademark;

f) instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

2. That the Court enter an order pursuant to 15 U.S.C. § 1116(a)(d)(1)(A) impounding all counterfeit and infringing merchandise and materials bearing any of Surf's Up's trademark(s).

Compl. 9–10.

At the hearing, Plaintiff's counsel advised that Plaintiff also seeks injunctive relief but is not pursuing relief as to any merchandise, noting there was no evidence that Defendants were selling merchandise with the protected mark on it. As further elaborated by Fire, Plaintiff seeks a "permanent injunction restraining and enjoining the Defendants from continuing to infringe and misappropriate [Plaintiff's] trademark, trading and profiting off [Plaintiff's] good will and reputation invested in and represented by the mark." Fire Aff. ¶ 6. Fire also adds that he "might get back into this business one day and do not want my business and marks confused with the Defendants." *Id.*

Given the ongoing trademark infringement by Defendants Section 1116 of Title 15 gives the court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ." 15 U.S.C. § 1116(a). To be granted a permanent injunction, the plaintiff in an action involving trademark infringement must satisfy the traditional permanent-injunction analysis. *Mary Kay Inc. v. Ayres,* 827 F. Supp. 2d 584, 595 (D.S.C. 2011). That is, Plaintiff must demonstrate irreparable harm, inadequacy of purely legal remedies, hardships balancing in its favor, and that the public interest would not be disserved by the injunction. *See PBM Products, LLC v. Mead Johnson & Co.,* 639 F.3d 111, 126 (4th Cir. 2011).

In *Lone Star Steakhouse & Saloon, Inc., v. Alpha of Virginia, Inc.,* the Fourth Circuit stated that "an injunction is the preferred remedy to insure that future violations will not occur" in a trademark infringement action. 43 F.3d 922, 939 (4th Cir. 1995) (internal quotation marks omitted). The court also noted that Lanham Act plaintiffs "need not . . . offer [ ] specific evidence of irreparable injury," given that "irreparable injury regularly follows from trademark

infringement." *Id.* Additionally, the *Lone Star* court noted that "an injunction in [a trademark infringement case] would serve the public interest by preventing future consumers from being misled." 43 F.3d at 939. Further, a court may grant an injunction in a default judgment action involving trademark infringement. *See Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, 958 F. Supp. 2d 588, 596 (D. Md. 2013).

Here, the undersigned finds Plaintiff has satisfied the factors required to demonstrate the propriety of a permanent injunction. The continued obvious mark infringement by Defendants can naturally create irreparable injury to the actual owner of the mark. The public interest will be served by injunctive relief that ends the infringing use of the mark. While, as discussed above, the undersigned finds monetary relief is also appropriate, injunctive relief is needed to end the infringing behavior. *See Lone Star*, 43 F.3d at 939. Balancing any potential hardships weighs in Plaintiff's favor, as well. Accordingly, it is recommended that Plaintiff be granted the permanent injunction it seeks.

3.    Attorney Fees

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 USC § 1117(a). The Fourth Circuit has held a court may find a case "exceptional" under the Lanham Act for purposes of an award of attorney fees when, in light of the totality of the circumstances, the court determines that:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015)

(citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) and *Fair*

*Wind Sailing, Inc. v. Dempster*, 764 F.3d 303(3d Cir. 2014)) (internal quotation marks omitted). A court should exercise its discretion in determining, on a case-by-case basis, whether a matter is "exceptional" for these purposes. *Octane Fitness*, 134 S. Ct. at 1756.

Considering the circumstances of this case, the undersigned recommends a finding that this case is "exceptional" for purposes of awarding attorneys' fees to Plaintiff. Because Defendants have not pursued a position in this case (subsequent to an early appearance by their now-relieved counsel),[3] the first factor of whether there is an "unusual discrepancy" between the positions of the parties cannot be evaluated adequately. That stated, Defendants' continued infringement and failure to respond to orders in this litigation are "objectively unreasonable." As to the second factor—whether Defendants litigated this matter in an unreasonable manner—Defendants who were aware of an action and were provided with notice of motions and hearings but chose not to appear acted unreasonably. As to the third factor, the undersigned is of the opinion that an award of appropriate attorneys' fees is necessary here in view of Defendants' continued, blatant use of the Surf's Up Family Fun Center mark. Plaintiff has been required to expend fees in defense of its mark, even after an initial (but ultimately dishonored) agreement by Defendants not to use the mark. The award of fees will serve the purpose of compensating Plaintiff and may serve to deter Defendants from their continued infringing behaviors. Accordingly, the undersigned recommends a finding that this is an "exceptional case" in which Plaintiff—the undisputedly prevailing party—should be awarded reasonable attorneys' fees. Here, Plaintiff seeks an award of attorney fees of "not less than [] $200,000.00." ECF No. 107.

---

[3] Plaintiff has proffered information concerning Defendant Rahim's considerable financial resources, *see* ECF Nos. 107-2 and 107-3, to indicate Defendants failure to defend this action is not related to any lack of resources for counsel.

The Fourth Circuit has recognized that the allowance of attorney fees "is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 (4th Cir. 1978) (quoting *United States v. Anglin and Stevenson*, 145 F.2d 622, 630 (10th Cir. 1944)). "[T]he district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established." *In re Abrams & Abrams, P.A*., 605 F.3d 238, 243 (4th Cir. 2010) (citing *Allen v. U.S.*, 606 F.2d 432, 435 (4th Cir. 1979)). In considering contingent-fee contracts, too, "the review of fee arrangements is for reasonableness." *Id.*

The facts and circumstances to be considered by the court in determining reasonable attorneys' fees include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney fees awards in similar cases. *In re Abrams & Abrams*, 605 F.3d at 244 (citing *Allen*, 606 U.S. at 436 n.1); *Barber*, 577 F.2d at 226, n.28.

Here, Plaintiff's counsel and Plaintiff entered into a one-third (1/3) contingency fee contract, with credit provided for a $2,500 retainer paid initially. Fire Aff. ¶ 7. Of note, *Barber* characterized factor six as "the attorney's expectations at the outset of the litigation," 577 F.2d at 226 n.28; while *Allen* characterized that factor as "the contingency of a fee[,]" 606 F.2d at 436

n.1. As the *In re Abrams & Abrams* court noted, *Allen's* version is appropriate when contingency fees are being considered because it "deals with contingent fees and places upon the district court the obligation to limit such fees to a reasonable amount." 605 F.3d at 244 n.3 (internal quotation and citation omitted). Further, while the court should consider all factors, not all factors will inform the court's decision every time. *See Muhler Co.*, 2014 WL 4269078, at *8.

As the Fourth Circuit noted in *In re Abrams & Abrams*, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation." 605 F.3d at 245. In arguing that this contingency fee arrangement should be honored when the court considers the fees to award, Plaintiff submits that intellectual property lawyers are able to command much higher fees than ordinary litigators. ECF No. 107 at 5 (citing www.nationaljurist.com/lawyer-statesman/most-lucrative-intellectual-property) (last visited Nov. 14, 2017). Plaintiff argues that, as it is no longer in business and has no revenue, it could not have afforded to have paid an intellectual property lawyer on an hourly basis.

Accordingly, Plaintiff submits it is appropriate to calculate the fee award based on the parties' agreement, rather than using a lodestar [time worked multiplied by an appropriate hourly rate]. ECF No. 107 at 5-6. In considering this argument and the first factor of "Time and labor expended," among other factors, the undersigned agrees it would be inappropriate to affix a lodestar-fee analysis to this case. In *In re Abrams & Abrams*, the Fourth Circuit found error in the district judge's application of "an hourly rate calculation based on dubious estimations of the applicable hours and rates with no further consideration of the relevance of the contingency fee agreement." 605 F.3d at 245. Rather, the court determined that affixing a lodestar fee in that contingency fee case "threaten[ed] to nullify the considerable advantages of contingency arrangements. "*Id.*

Here, the court has considered the detailed analysis offered in *In re Abrams & Abrams* regarding contingency agreements' ability to protect litigants' interests as well as the incentive such agreements offers to counsel because it "automatically handles compensation for the uncertainty of litigation because it rewards exceptional success, and penalizes failure." 605 F.3d at 246 (internal citation and quotation omitted).

Related to this analysis is the fourth factor of counsel's opportunity costs in pursuing the contingency matter. Here, counsel informs the court that he "performs a substantial amount of legal work for clients who pay for his services by the hour, including plaintiffs and defendants in various litigation." ECF No. 107 at 6–7. The undersigned notes then, that counsel's pursuit of this matter on a contingency basis caused him to forbear the opportunity to earn hourly fees for another client with a substantial likelihood of being paid in a timely manner to press Plaintiff's case for it with no guarantee of any payment.

In addition, Lanham Act matters are often noted to be "'generally recognized as complex areas of the law.'" *Muhler*, 2014 WL 4269078 at *9 (quoting *Firehouse Rest. Grp. Inc. v. Scurmont*, LLC, No. 4:09-cv-00618, 2011 WL 4943889, at *14 (D.S.C. Oct. 17, 2011)). Here, counsel was required to plead and prepare to establish various elements of an infringement claim. Early in this matter, Plaintiff sought a preliminary injunction, which Defendants opposed. Counsel also prepared for and defended against a motion to set aside default and dismiss that had been brought while Defendants were still counseled. Further, the continued pursuit of default judgment has included detailed briefing and argument by counsel.

In considering the eighth factor of the amount at issue and the results obtained, the undersigned has recommended an award of injunctive relief and monetary damages, giving Plaintiff the successful result it seeks. Courts have often considered the relief obtained to be the

"most critical factor in determining the reasonableness of the fee." *In re Abrams & Abrams*, 605 F.3d at 247 (internal citation and quotation omitted). In *In re Abrams & Abrams*, the Fourth Circuit found that such logic would apply to contingency cases. *Id.*

In considering the factors of customary fees for such work (factor five) and attorney fees awards in similar cases (factor 12), the undersigned notes Plaintiff has not proffered evidence or argument in this regard. In any event, the court notes that in *In re Abrams & Abrams* the Fourth Circuit found these considerations should be considered in the context of whether the contingency rate—here one/third—was itself customary for such work based on contingency fee agreements. 605 F.3d at 247.

Nonetheless, the undersigned notes that Plaintiff seeks a fee award of "not less than" $200,000. This amount is, of course, significantly less than one-third of the $1,605,208.33 monetary damages award it seeks. Accordingly, the undersigned takes notice of customary fees in intellectual property matters in this District and of the typical contingency-fee percentage in this District and finds that an award of $200,000 is reasonable in this matter. *Cf. Taylor v. Cire, LLC*, No. CIV.A. 4:13-1711-BHH, 2015 WL 727939, at *5 (D.S.C. Feb. 19, 2015) (considering, *inter alia*, "the undersigned's knowledge" of rates in the district when determining whether a requested fee award was reasonable when compared with fees awarded in similar matters).

4.    Costs

Finally, Plaintiff seeks costs in the amount of $1,536.49. *See* ECF No. 107-5. A successful Lanham Act plaintiff "shall be entitled, . . . subject to the principles of equity, to recover . . . the costs of the action." 15 U.S.C. § 1117(a). The award of "costs under the Lanham Act is committed to the sound discretion of the Court, based on the equities of each particular

case." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 371 (4th Cir. 2001) (citation omitted).

Here, Plaintiff seeks $1,536.49 in costs related to copying, postage, process-server fees, and court fees. *See* ECF No. 107-5. The undersigned is of the opinion that the full amount of costs sought are reasonable based on the equities of the case. Accordingly, it is recommended that Plaintiff be awarded costs of $1,536.49.

IV.    Conclusion and recommendation

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Default Judgment, ECF No. 87, be granted, and default judgment be entered in Plaintiff's favor. Particularly, the recommended judgment includes the following:

- Based on the injunctive relief sought in the Complaint, it is recommended that a permanent injunction be issued enjoining Defendants Rick Rahim; Myrtle Laser Tag, LLC; and BusinessVentures.com, LLC, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    a) using the Surf's Up Trademark, or any other trademarks that are confusingly similar to the Trademark, for retail products, or making any other unlawful use of the Trademark or any other trademarks owned by Surf's Up;

    b) performing any act which is likely to lead members of the trade or public to believe that any product manufactured, imported, distributed, offered for sale, or sold by Defendants is in any manner associated or connected with Surf's Up, or is licensed, sponsored, approved, or authorized by Surf's Up;

    c) engaging in any other activity constituting infringement of the Trademark;

    d) taking any action, including the unauthorized use of the Trademark, that dilutes the unique association between the Trademark and Surf's Up, or that tarnishes the reputation or image of Surf's Up;

    e) disposing of, destroying, altering, moving, removing, concealing, tampering with, or in any manner secreting any business records (including

computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to any retail services offered in connection with the Trademark, or any mark or designation that is confusingly similar to any of the Trademark;

f) instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

g) ordering, pursuant to 15 U.S.C. § 1116(a)(d)(1)(A), that all counterfeit and infringing merchandise and materials bearing any of Surf's Up's trademark(s) be impounded.[4]

Further, it is recommended that judgment be entered against all Defendants, jointly and severally for the following:

- Monetary damages in the amount of $1,605,208.33;

- Attorney fees of $200,000; and

- Costs of $1,536.49.

IT IS SO RECOMMENDED.

November 14, 2017                                        Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[4] At the default-judgment hearing, Plaintiff's counsel advised the court that Plaintiff seeks injunctive relief. As noted above, the undersigned is of the opinion that such relief is appropriate. Because Plaintiff's briefs in support of default judgment do not provide the precise terms of the permanent injunction Plaintiff seeks. Accordingly, the recommended injunction language is derived from Plaintiff's Complaint. To the extent Plaintiff seeks other injunctive relief Plaintiff may wish to provide the precise injunctive relief sought and any additional briefing as a response to this Report during the "objections" period.